**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION<br>1100 15th St. NW<br>Washington, DC 20005,<br><br>Plaintiff<br><br>vs.<br><br>WARRANTY GLOBAL GROUP, INC.<br>15510 Wright Brothers Drive<br>Addison, TX 75001<br><br>US HOME GUARD, LLC<br>15510 Wright Brothers Drive<br>Addison, TX 75001<br><br>SUPERIOR HOME PROTECTION, LLC<br>2163 W. Terra Lane<br>O'Fallon, MO 63366<br><br>OASIS HOME PROTECTION, LLC<br>20200 West Dixie Highway<br>Suite 902<br>Miami, FL 33180<br><br>Defendants. | ) | CASE NO.: 1:25-CV-2293<br><br>JUDGE:<br><br>**COMPLAINT**<br><br>*JURY DEMAND ENDORSED HEREON* |

Plaintiff Federal National Mortgage Association, for its complaint ("Complaint") against Defendants Warranty Global Group, Inc., US Home Guard, LLC, Superior Home Protection, LLC, and Oasis Home Protection, LLC states and alleges as follows:

## NATURE OF THE CASE

1. Federal National Mortgage Association ("Fannie Mae") brings this action seeking injunctive relief and damages to address willful misuse of Fannie Mae's distinctive, renowned and incontestable service mark, "FANNIE MAE" (hereinafter "mark"), by Defendants to deceive consumers and profit from the fraudulent sale of home warranty products. Defendants prominently displayed the "FANNIE MAE" mark in solicitations and marketing materials, creating a false impression of affiliation, sponsorship, or endorsement by Fannie Mae. Their conduct has caused actual consumer confusion, has diluted and tarnished the FANNIE MAE mark, and has resulted in significant harm to Fannie Mae's goodwill and reputation. Fannie Mae seeks injunctive relief, damages, and other remedies to stop the ongoing infringement and prevent further dilution of its mark.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Lanham Act, 15 U.S.C. § 1051 et seq.

3. Jurisdiction is also proper under 28 U.S.C. § 1338(a) because the claims arise under Acts of Congress relating to service marks.

4. This Court has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5. In addition, this Court has jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendants because they have purposefully directed their business activities toward, and have caused injury within, the State of Ohio and this District. Defendants have engaged in the marketing, sale, and distribution of products and services bearing the infringing mark to consumers located within this District, thereby purposefully availing themselves of the privilege of conducting business in this forum and causing tortious injury in this District. The exercise of jurisdiction over Defendants comports with due process and Ohio's long-arm statute, R.C. § 2307.382.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, including Defendants' targeting of and transactions with consumers in the Northern District of Ohio.

**PARTIES**

8. Plaintiff is a government-sponsored enterprise created by Congress to make home ownership more accessible for low- and moderate-income Americans. 12 U.S.C. §§ 1716–17. Fannie Mae purchases mortgage loans from lenders on the secondary market and, in so doing, "provide[s] stability in the secondary market for residential mortgages." 12 U.S.C. §§ 1716(1), (5). Fannie Mae's principal place of business is in Washington, D.C. 12 U.S.C. § 1717(a).

9. Defendant Warranty Global Group, Inc. d/b/a Global Home USA ("Warranty Global") is incorporated under the laws of the State of Texas and maintains its

principal place of business at 15510 Wright Brothers Drive, Addison, Texas 75001-4273. Warranty Global is therefore a citizen of Texas for diversity purposes.

10. Warranty Global markets its Global Home USA service plans in every state except Washington, Florida, and California, and expressly solicits Ohio homeowners to purchase its contracts.

11. Warranty Global dispatches local technicians and pays for repairs at the Ohio consumer's residence through Warranty Global's relationship with Dealers Assurance Company of Upper Arlington, Ohio.

12. Defendant US Home Guard, LLC ("US Home") is organized under the laws of the State of Texas and maintains its principal place of business at 15510 Wright Brothers Drive, Addison, Texas 75001. US Home is therefore a citizen of Texas for diversity purposes.

13. Defendant Superior Home Protection, LLC ("Superior Home") is organized under the laws of the State of Missouri and maintains its principal place of business at 2163 W. Terra Lane, O'Fallon, Missouri 63366. Superior Home is therefore a citizen of Missouri for diversity purposes.

14. Defendant Oasis Home Protection, LLC ("Oasis Home") is organized under the laws of the State of Florida and maintains its principal place of business at 20200 West Dixie Highway, Suite 902, Miami, Florida 33180. Oasis Home is therefore a citizen of Florida for diversity purposes.

## SERVICE MARK REGISTRATION

15. The mark "FANNIE MAE" is registered with the United States Patent and Trademark Office as a service mark under Registration No. 946,030, issued to the Federal

National Mortgage Association on October 24, 1972, with a claimed first use in commerce date of February 20, 1956. The registration has become incontestable under 15 U.S.C. § 1065.

## FACTUAL ALLEGATIONS

16. Fannie Mae serves a Congressionally mandated purpose of promoting homeownership throughout the United States by purchasing mortgage loans from banks and mortgage lenders, which enables those entities to make additional loans to homeowners. Fannie Mae does not originate mortgages itself; in fact, it is statutorily prohibited from doing so. Fannie Mae's Congressional charter dates to 1954, although it was first organized by the federal government in 1938 and Fannie Mae made its first mortgage loan purchases that same year.

17. In 2008, during the financial crisis, Fannie Mae was placed into conservatorship by its regulator, the Federal Housing Finance Agency, and has remained in conservatorship to this day.

18. Fannie Mae packages loans it purchases into mortgage-backed securities, which are investment instruments sold primarily to institutional investors in the United States and abroad.

19. Because Fannie Mae does not originate mortgages, it does not interact directly with homeowners. Rather, entities known as "servicers" interact with the homeowners whose loans have been sold to Fannie Mae. Those servicers collect loan payments from homeowners and deliver the payments (minus a small fee) to Fannie Mae.

20. Fannie Mae does not require homes secured by a mortgage sold to Fannie Mae to have a home warranty. Fannie Mae therefore does not solicit individual homeowners to acquire a home warranty policy nor require servicers to do so.

21. Although Fannie Mae does not lend directly to consumers, its mark is known to them. When Fannie Mae purchases a consumer's mortgage loan from a lender, Fannie Mae is legally required to inform the consumer, in writing, of that purchase. Fannie Mae is also frequently mentioned in national, local and social media, exposing many consumers across the country to the mark.

22. Fannie Mae's mark and consumer goodwill are valuable commercial assets built over years of business supporting the country's mortgage market.

23. Beginning in or around July 2023 and continuing through the present, Defendants have engaged in a coordinated nationwide campaign of mailing unsolicited solicitations through the United States Postal Service to consumers (collectively, the "Fraudulent Solicitations") using Fannie Mae's mark without Fannie Mae's permission or authorization.

24. Warranty Global transacts business in the State of Ohio, including by directing and sending the Fraudulent Solicitations to Ohio consumers, soliciting sales from Ohio consumers, and engaging in commerce affecting Ohio consumers.

25. Upon information and belief, Warranty Global's president and owner, Steven Condotta, directs and controls the fraudulent and deceptive activities described herein. Other corporate officers involved in directing or facilitating the misconduct include Michael Hall, Patti Kreke, James Smith, Jason Schmuck, and Brent Kreke.

26. Warranty Global contracts with, operates in concert with, and uses as co-conspirators at least three affiliated entities in carrying out its unlawful scheme:

a. US Home, which conducts business in Ohio by sending solicitations and making warranty sales to Ohio consumers;

b. Superior Home, which conducts business in Ohio by marketing, soliciting, and selling warranty products to Ohio consumers under the false appearance of Fannie Mae affiliation; and

c. Oasis Home, which conducts business in Ohio by participating in the marketing and sale of home warranties to Ohio consumers under the false endorsement of Fannie Mae.

27. Upon information and belief, the Defendants share personnel and coordinate their activities. Defendants share personnel across entities, including purported "Program Managers" Amber Lawrence, Andrew Thompson, Bill Warner, Cal Varnson, Evlyn Landry, and George Walker. These purported individuals serve as the consumer-facing representatives for purchasing warranties and are instrumental in closing sales based on the Fraudulent Solicitations.

28. Upon information and belief, Warranty Global functions as both the back-office administrator for its own warranty products (whether legitimate or not) and as the architect of the fraudulent marketing campaign. To facilitate the scheme, Warranty Global commissions front-end companies – including US Home, Superior Home, and Oasis Home – to carry out the initial consumer solicitations via the Fraudulent Solicitations.

29. The Fraudulent Solicitations falsely claim that a home warranty associated with the recipient's property has expired or is about to expire, and that immediate renewal is required to maintain coverage.

30. Defendants prominently display FANNIE MAE MORTGAGE® as an alternative to the Plaintiff's federally registered mark "Fannie Mae" in bold capital letters in both the header and body of the Fraudulent Solicitations to create the false impression that Fannie Mae authored, authorized, sent, or endorsed the communication.

31. Some of the Fraudulent Solicitations only mention Defendants in small font as a footnote, further misleading the recipients into believing that the Fraudulent Solicitations emanate from Fannie Mae. Other Fraudulent Solicitations do not even mention the Defendants by name, further conveying the notion to consumers that Fannie Mae is the sender of the Fraudulent Solicitation. (Exs. 1-7.)

32. The Fraudulent Solicitations include urgent and imperative statements—such as "RESPONSE TO THIS NOTICE REQUESTED" or "IMMEDIATE RESPONSE NEEDED"—repeated in both the body text and in a prominent header, designed to create a false sense of urgency and compel immediate consumer action.

33. Defendants further strengthen the false association by including statements such as "It is important you contact our office … to avoid any unnecessary delays in your coverage," with the pronoun "our" deliberately positioned to cause the consumer to read it as referring to Fannie Mae.

34. The envelopes containing an address window showing a portion of the Fraudulent Solicitations are marked with "Lender Info: FANNIE MAE MORTGAGE®,"

misleading recipients into believing the mailing originated directly from Fannie Mae and that Fannie Mae is the lender which originated the recipient's mortgage.

35. Because Fannie Mae is chartered by Congress, and has been in conservatorship under the authority of the Federal Housing Finance Agency since the housing crisis of 2008, Defendants' use of the mark in the Fraudulent Solicitations carries an imprimatur of federal government authority, particularly as the Fraudulent Solicitations are designed to look official through the use of terms such as "Official Business," "Penalty for Private Use $300," "FORM 9550-WARR," and a prominent display of a bar code.

36. Defendants designed these Fraudulent Solicitations to cause consumers to believe that: (1) the correspondence was sent by Fannie Mae; (2) Fannie Mae offered or endorsed the purported home warranty product; and (3) in some instances required the same for the borrower to remain in good standing.

37. Fannie Mae has never authorized Defendants to use its mark, name, brand, logo, or any other identifier in any capacity, whether in marketing, solicitations, or otherwise.

38. Fannie Mae has never authorized Defendants to contact any consumers regarding any mortgage, product, or home warranty.

39. Fannie Mae has never granted Defendants access to any personal identifying information, or residential address data for consumers. Defendants have never obtained such authorization from Fannie Mae, and any such request – had it been made – would have been denied.

40. On some of the Fraudulent Solicitations these front-end companies are identified only in fine print at the bottom of the solicitation, allowing Warranty Global to

obscure its role while still reaping the benefits of the deception, while on others the front-end companies are not mentioned at all, leaving consumers to believe that Fannie Mae is the provider of the home warranty.

41. An exemplar of a Fraudulent Solicitation identifying Warranty Global and US Home is shown in Exhibit 1.

42. An exemplar of a Fraudulent Solicitation identifying US Home is shown in Exhibit 2.

43. An exemplar of a Fraudulent Solicitation identifying Warranty Global and Superior Home is shown in Exhibit 3.

44. An exemplar of a Fraudulent Solicitation identifying Superior Home is shown in Exhibit 4.

45. An exemplar of a Fraudulent Solicitation identifying Warranty Global and Oasis Home is shown in Exhibit 5.

46. An exemplar of a Fraudulent Solicitation identifying Oasis Home is shown in Exhibit 6.

47. An exemplar of a Fraudulent Solicitation to an Ohio resident is shown in Exhibit 7.

48. When consumers respond to the solicitations, Defendants and their co-conspirators reinforce the false narrative in follow-up phone calls, and urge the purchase of warranty products.

49. Defendants' conduct is designed to induce consumers to purchase warranties under false pretenses, based on: (1) false statements that Fannie Mae endorses or sells the warranty; (2) misrepresentations about the status of the consumer's warranty

coverage; (3) deceptive use of Fannie Mae's mark; and (4) misrepresentations that a home warranty is required to remain in compliance with the terms and conditions of the mortgage.

50. Fannie Mae has received multiple inquiries from confused consumers who believed the solicitations came from Fannie Mae or were endorsed by Fannie Mae.

51. Upon information and belief, some consumers have been wrongfully induced to purchase these warranty products as a result of Defendants' misrepresentations.

52. Defendants' actions have caused and continue to cause substantial harm to Fannie Mae, including dilution and tarnishing of its mark, loss of goodwill, and reputational damage in the mortgage industry.

53. Defendants' scheme operates on a nationwide scale and threatens continued injury to consumers and to Fannie Mae absent immediate injunctive relief.

**COUNT I**
**Service Mark Infringement under 15 U.S.C. § 1114 against All Defendants**

54. Fannie Mae incorporates by reference all preceding paragraphs as if fully rewritten herein.

55. Fannie Mae is the sole owner of a valid and enforceable service mark registered with the United States Patent and Trademark Office on October 24, 1972, and holds all rights, title, and interest in that service mark. The registration is valid, subsisting, incontestable, and in full force and effect.

56. Without Fannie Mae's consent or authorization, Defendants used Fannie Mae's registered service mark, FANNIE MAE, in its fraudulent reproduction styled as "FANNIE MAE MORTGAGE®" and included a mark registration symbol to further

unlawfully legitimize and conceal its infringement, in connection with the marketing, sale, and distribution of home warranty products.

57. Defendants used the mark in interstate commerce in a manner likely to cause confusion, mistake, and/or deception among consumers as to the source, affiliation, sponsorship, or approval of Defendants' Fraudulent Solicitations and products.

58. Specifically, Defendants prominently displayed the Fannie Mae mark and improperly presented it as "FANNIE MAE MORTGAGE®" on the Fraudulent Solicitations, appearing through the address window on the mailing envelopes, to Ohio and nationwide consumers, creating the false impression that Fannie Mae was the sender or endorsed the warranty products.

59. Defendants' unauthorized use of Fannie Mae's mark was deliberate and intended to trade on Fannie Mae's goodwill and reputation to induce consumers to purchase warranty products under false pretenses.

60. Defendants' conduct has caused, and will continue to cause, actual confusion among consumers, as evidenced by multiple consumers contacting Fannie Mae under the mistaken belief that the Fraudulent Solicitations were legitimate Fannie Mae communications.

61. Defendants' acts constitute service mark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

62. As a direct and proximate result of Defendants' infringement, Fannie Mae has suffered, and will continue to suffer, substantial damages, including harm to its mark, and loss of goodwill in an amount to be proven at trial.

63. Defendants' infringement was willful and deliberate, making this an exceptional case entitling Fannie Mae to recover treble damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1117.

64. Fannie Mae is entitled to injunctive relief under 15 U.S.C. § 1116 to prevent further infringement, as well as an order requiring Defendants to deliver up for destruction all infringing materials.

**COUNT II**
**False Designation of Origin or Sponsorship under 15 U.S.C. § 1125(a) against All Defendants**

65. Fannie Mae incorporates by reference all preceding paragraphs as if fully rewritten herein.

66. Defendants have used in commerce false designations of origin, false descriptions, and false or misleading representations of fact that misrepresent the nature, characteristics, and origin of their home warranty products.

67. Specifically, Defendants used the Fannie Mae mark and improperly presented it as "FANNIE MAE MORTGAGE®" in the Fraudulent Solicitations, with the same appearing on the accompanying mailing envelopes, thereby creating the false impression that their products were offered, sponsored, approved, required, or authorized by Fannie Mae.

68. Defendants' conduct constitutes a false designation of origin because it is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Fannie Mae, and as to the origin, sponsorship, or approval of Defendants' services.

69. Defendants have also engaged in false or misleading advertising by making statements in the Fraudulent Solicitations—both express and implied—that falsely suggest warranties are required by Fannie Mae and were expiring or in need of renewal.

70. These misrepresentations were material in that they were likely to influence consumers' purchasing decisions and induce them to buy Defendants' warranty products under the mistaken belief that they were endorsed, required, or offered by Fannie Mae.

71. Defendants' acts were willful, deliberate, and intended to trade on Fannie Mae's goodwill and reputation for Defendants' sole financial benefit.

72. As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1125(a), Fannie Mae has suffered, and will continue to suffer, substantial damages, including harm to its mark and loss of goodwill in an amount to be proven at trial.

73. Fannie Mae is entitled to injunctive relief under 15 U.S.C. § 1116, damages and disgorgement of Defendants' profits under 15 U.S.C. § 1117, and any other relief deemed just and proper by the Court.

**COUNT III**
**False Endorsement under 15 U.S.C. § 1125(a) against All Defendants**

74. Fannie Mae incorporates by reference all preceding paragraphs as if fully rewritten herein.

75. Fannie Mae's FANNIE MAE mark is legally protectable and registered with the United States Patent and Trademark Office.

76. Fannie Mae owns all rights, title, and interest in the FANNIE MAE mark and has used it in commerce to identify its mortgage services and distinguish them from those of others.

77. Without authorization, Defendants have used the FANNIE MAE mark in connection with the marketing, sale, and promotion of their home warranty products.

78. Defendants' use of the FANNIE MAE mark was intended and likely to create confusion among consumers regarding Fannie Mae's sponsorship, approval, or endorsement of Defendants' services.

79. By prominently displaying the FANNIE MAE mark in all capital letters on the Fraudulent Solicitations, mailing envelopes, and other marketing materials, Defendants have falsely conveyed that Fannie Mae endorses, approves, requires, or is otherwise affiliated with their products.

80. Defendants' conduct was willful, deliberate, and designed to trade on Fannie Mae's goodwill and reputation for Defendants' sole financial benefit.

81. As a direct and proximate result of Defendants' false endorsement, Fannie Mae has suffered, and will continue to suffer, substantial damages, including harm to its mark, and loss of goodwill in an amount to be proven at trial.

82. Fannie Mae is entitled to injunctive relief under 15 U.S.C. § 1116, damages and disgorgement of Defendants' profits under 15 U.S.C. § 1117, and any other relief the Court deems just and proper.

**COUNT IV**
**Common Law Service Mark Infringement against All Defendants**

83. Fannie Mae incorporates by reference all preceding paragraphs as if fully rewritten herein.

84. Fannie Mae owns all rights, title, and interest in the service mark FANNIE MAE, which has been used in commerce to identify Fannie Mae's services and which distinguishes Fannie Mae's service from others.

85. Through continuous and exclusive use in commerce, Fannie Mae's mark has developed substantial goodwill and consumer recognition, making it a valuable commercial asset entitled to protection under the common law of the State of Ohio.

86. Without authorization, Defendants used the FANNIE MAE mark in connection with the marketing, sale, and distribution of home warranty products in a manner likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or affiliation of Defendants' services.

87. Defendants' conduct has caused, and will continue to cause, actual confusion among consumers, as evidenced by inquiries from consumers to Fannie Mae who mistakenly believed the solicitations originated from or were authorized by Fannie Mae.

88. Defendants' acts were willful and intended to trade on Fannie Mae's goodwill and reputation for their own commercial gain.

89. As a direct and proximate result of Defendants' common law mark infringement, Fannie Mae has suffered, and will continue to suffer, substantial damages, including harm to its mark, and loss of goodwill in an amount to be proven at trial.

90. Fannie Mae is entitled to injunctive relief to prevent further infringement, as well as damages, disgorgement of Defendants' profits, and any other relief deemed just and proper by the Court.

**COUNT V**
**Violation of the Ohio Deceptive Trade Practices Act Against All Defendants**
**(R.C. 4165.02)**

91. Fannie Mae incorporates by reference all preceding paragraphs as if fully rewritten herein.

92. Defendants, in the course of their business, have engaged in deceptive trade practices within the meaning of R.C. 4165.02 by causing a likelihood of confusion or misunderstanding as to the affiliation, connection, or association of Defendants with Fannie Mae, and as to whether Defendants' goods and services are certified or authorized by Fannie Mae.

93. Defendants have represented that their home warranty products have sponsorship, approval, or characteristics that they do not have, namely falsely representing that Fannie Mae has endorsed, authorized, or will provide the warranties advertised in the Fraudulent Solicitations.

94. Defendants have represented that their home warranty products were of a particular standard, quality, or grade—namely, that they were Fannie Mae-backed warranties—when in fact they were not.

95. Defendants' conduct was willful, intentional, and part of a deliberate scheme to misappropriate Fannie Mae's goodwill and reputation in order to induce sales under false pretenses.

96. As a direct and proximate result of Defendants' violations of R.C. 4165.02, Fannie Mae has suffered, and will continue to suffer, substantial damages, including harm to its mark, and loss of goodwill in an amount to be proven at trial.

97. Fannie Mae is entitled to injunctive relief under R.C. 4165.03 to prevent further violations, as well as damages, costs, and any other relief deemed just and proper by the Court.

**COUNT VI**
**Civil Conspiracy against All Defendants**

98. Fannie Mae incorporates by reference all preceding paragraphs as if fully rewritten herein.

99. Defendants Warranty Global, US Home, Superior Home, and Oasis Home, along with their officers, agents, and employees, engaged in a malicious combination to misappropriate Fannie Mae's name, mark, and goodwill in order to induce borrowers into purchasing Defendants' home warranty products.

100. The malicious combination included coordination and agreement among the Defendants to: (1) design and disseminate the Fraudulent Solicitations; (2) use Fannie Mae's protected intellectual property without authorization; and (3) mislead consumers into believing that Defendants' products were endorsed, required, or sponsored by Fannie Mae.

101. The combination and concerted actions of the Defendants caused injury to Fannie Mae's business, reputation, and property, diminished goodwill, and dilution of its mark.

102. The conspiracy was carried out through independent unlawful acts, including but not limited to: (1) federal service mark infringement under 15 U.S.C. § 1114; (2) false designation of origin and false advertising under 15 U.S.C. § 1125(a); and (3) violations of the Ohio Deceptive Trade Practices Act, R.C. 4165.02.

103. The Defendants acted with actual malice, or at a minimum, with conscious disregard of Fannie Mae's rights, and with the intent to injure Fannie Mae.

104. As a direct and proximate result of the conspiracy and the underlying unlawful acts, Fannie Mae has suffered, and will continue to suffer, substantial damages, including harm to its mark, and loss of goodwill in an amount to be proven at trial.

105. Defendants' conduct was willful, intentional, and malicious, entitling Fannie Mae to compensatory damages, punitive damages, and such other relief as the Court deems just and proper.

**COUNT VII**
**Unjust Enrichment Against All Defendants**

106. Fannie Mae incorporates by reference all preceding paragraphs as if fully rewritten herein.

107. Defendants have unlawfully received monetary and other benefits from consumers who purchased home warranty products under the false belief that such products were authorized, sponsored, or required by Fannie Mae.

108. These benefits were obtained by Defendants through the unauthorized use of Fannie Mae's mark and goodwill in the Fraudulent Solicitations and related marketing.

109. Defendants' actions were wrongful and taken without Fannie Mae's knowledge or consent, and Defendants have no lawful entitlement to the benefits they received as a result.

110. Retention of these benefits by Defendants would be unjust because they were procured through deception, misrepresentation, and the unlawful appropriation of Fannie Mae's intellectual property.

111. As a direct and proximate result of Defendants' conduct, Fannie Mae has suffered, and will continue to suffer, substantial damages, including harm to its mark, and loss of goodwill in an amount to be proven at trial.

112. Fannie Mae is entitled to restitution in an amount equal to the value of the benefits unjustly retained by Defendants, as well as such other relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Federal National Mortgage Association, dba Fannie Mae respectfully requests that the Court enter judgment in its favor and against Defendants, jointly and severally, and award the following relief:

1. Preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116, R.C. 4165.03, and the Court's equitable powers, restraining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from:

    a. Using the FANNIE MAE mark, in any form or design confusingly similar thereto, including but not limited to references to FANNIE MAE MORTGAGE®;

    b. Representing, directly or indirectly, that Defendants or their products are affiliated with, sponsored by, approved by, required by, or otherwise connected to Fannie Mae;

    c. Contacting individuals under false pretenses of association with Fannie Mae; and

    d. Engaging in any other conduct likely to cause confusion or deceive consumers regarding the origin, sponsorship, or approval of Defendants' products.

2. An order requiring Defendants to deliver up for destruction all infringing, misleading, and deceptive materials in their possession, custody, or control, including hard copy and electronically stored information.

3. An order for Defendants to account for and disgorge all profits unlawfully derived from their infringing activities, and to pay to Plaintiff all damages sustained by Plaintiff as a result of Defendants' wrongful conduct pursuant to 15 U.S.C. § 1117(a);

4. An award of damages under the Ohio Deceptive Trade Practices Act, R.C. 4165.03, and Ohio common law, including punitive damages where available.

5. An order requiring Defendants to provide a full and complete accounting of all sales, revenues, and profits derived from their wrongful acts, whether in cash or in kind.

6. An award of prejudgment and post-judgment interest.

7. An award of Fannie Mae's costs of suit, including reasonable attorneys' fees under 15 U.S.C. § 1117, R.C. 4165.03, and other applicable law.

8. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Patrick J. Thomas*
Patrick J. Thomas (0075276)
Ritzler, Coughlin & Paglia, Ltd.
1360 East Ninth Street
500 IMG Center
Cleveland, OH 44114
216.241.3963 Phone
216.241.5890 Fax
pthomas@rcp-attorneys.com

*/s/ Himanshu S. Amin*
Himanshu S. Amin (0065426)
Amin, Turocy & Watson, LLP
200 Park Avenue
Suite 300
Beachwood, Ohio 44122
216.696.6730 Phone
216.696.6730 Fax
trademarkmail@thepatentattorneys.com

Attorneys for Plaintiff Federal National Mortgage Association

**JURY DEMAND**

A trial by jury is hereby demanded under Rule 38 on all matters herein.

*/s/ Patrick J. Thomas*
Patrick J. Thomas (0075276)
Attorney for Plaintiff Federal National Mortgage Association